UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELISSA GALVEZ,

                           Plaintiff,

-v.-

INVESTCLOUD and MOTIVE CAPITAL
MANAGEMENT, LLC,

                           Defendants.

23 Civ. 11301 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Plaintiff Melissa Galvez brings this action against Defendants InvestCloud and Motive Capital Management, LLC ("Motive," and together with InvestCloud, "Defendants") for violations of the federal Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL").  Before the Court is Defendants' second partial motion to dismiss.  Specifically, Defendants seek to dismiss Count IV of the First Amended Complaint (the "FAC") and to dismiss Motive as a Defendant from the action.  For the reasons set forth below, the Court grants Defendants' motion in part and denies it in part.  Specifically, the Court dismisses Motive as a Defendant but allows Count IV to proceed.

## BACKGROUND[1]

### A.  Factual Background

At the heart of this litigation — and this motion — are the employment relationships alleged to have existed between and among Ms. Galvez, a New York resident (FAC ¶ 10), and Defendants.  Defendant InvestCloud develops and sells a no-code software platform for digital and commerce enablement within the financial industry.  (*Id.* ¶ 3).  InvestCloud is organized under the laws of California, but it has an office in New York.  (*Id.* ¶ 11).

Defendant Motive, an equity investment platform, is an investor and managing operator of InvestCloud.  (FAC ¶ 4).  Motive is a New York corporation with its principal place of business in New York.  (*Id.* ¶ 12).  As potentially relevant here, Ms. Galvez alleges that Motive is responsible for InvestCloud's daily operations (*id.* ¶ 4); that "employees, partners and principals of [Motive] were embedded in InvestCloud" (*id.* ¶ 5); and that those Motive employees "directed operations" at InvestCloud, including by recommending human resource and compensation policies and participating in "decision[s] such as hiring, firing, [and] promotion" (*id.*).

---

[1]  This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #21)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their partial motion to dismiss as "Def. Br." (Dkt. #30); to Plaintiff's opposition as "Pl. Opp." (Dkt. #31); and to Defendants' reply as "Def. Reply" (Dkt. #32).  As a final note, when referring to Plaintiff's opposition, this Opinion refers to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

Ms. Galvez alleges that she was hired by "Defendants" — without specifying which one — in July 2021 as a sales executive. (FAC ¶ 15). She performed sales work for Defendants at one of their New York offices for a period of approximately two years, until she was discharged on or about August 3, 2023. (*Id.* ¶ 10). Her primary work situs was InvestCloud's offices in New York (*id.* ¶ 18), but she largely worked from home (*id.* ¶ 19). Ms. Galvez alleges that Defendants were supposed to pay her a salary plus commission, but they never provided her with a written sales commission plan. (*Id.* ¶¶ 15-17). Because Ms. Galvez did not receive a written sales commission plan, she alleges that she could not evaluate the accuracy of her compensation to effectively advocate for timely change. (*Id.* ¶ 18).

Ms. Galvez's regular work hours were Monday through Friday from 9:30 a.m. to 5:30 p.m., with no breaks. (FAC ¶¶ 19-20). In addition to her regular work hours, Ms. Galvez alleges that each week, Defendants required her to work before 9:30 a.m. or after 5:30 p.m. on certain days and sometimes during weekends. (*Id.* ¶ 23). During these extra hours, Ms. Galvez mostly worked via virtual meeting platforms. (*Id.* ¶ 25). She estimates that she normally worked between 5 and 10 hours each week outside her normal 40-hour work schedule, but some weeks she would work as many as 15 to 20 hours more than her regular schedule. (*Id.* ¶ 28).

In March 2022, Ms. Galvez closed a sale to Digital Swiss Gold (USA) LLC ("Digital Swiss Gold") with a first-year contract value of $2.5 million. As a result, she allegedly earned a commission of $158,950. (FAC ¶ 30). On

March 25, 2022, Ms. Galvez's sales manager, Robert O'Boyle, sent an updated "approved" commission request to Pete Hess, Mid-Market President; Ella Weiss, P&L Manager; and Brent Thompson. (*Id.* ¶ 31). That request approved the $158,950 commission. (*Id.*). It is not clear from the FAC who employed Mr. O'Boyle, Mr. Hess, Ms. Weiss, or Mr. Thompson, or what role Mr. Thompson had. (*See id.*).

In June 2022, Ms. Galvez closed another sale to Digital Swiss Gold with a contract value of $1,425,000. (FAC ¶ 32). As a result, she allegedly earned an additional commission of $117,750. (*Id.*). On June 8, 2022, Mr. O'Boyle sent an email correcting Ms. Galvez's commission from 10% to 10.5%. (*Id.* ¶ 33). That month, Digital Swiss Gold paid InvestCloud $500,000 as part of the contract. (*Id.* ¶ 35). Ms. Galvez was subsequently paid $40,000 in earned commission, but was still owed $236,700 in commission for the two sales. (*Id.*).

About six months later, on December 20, 2022, Mr. Hess sent an email to Ms. Galvez notifying her that Defendants were unilaterally and retroactively changing the terms of the commissions that she had earned on prior sales. (FAC ¶ 36). Then, on August 3, 2023, Defendants terminated Ms. Galvez's employment. (*Id.* ¶ 40). At that time, Mr. Hess allegedly told Ms. Galvez that she would receive the commissions she earned. (*Id.* ¶ 41). But Ms. Galvez's severance agreement conditioned any severance pay on her complete waiver of all wage-and-hour claims and any entitlement to commissions. (*Id.* ¶ 42). To date, Ms. Galvez has not received her remaining earned commissions. (*Id.*

¶ 44). In fact, she has not received any payment for commissions earned since July 2022. (*Id.* ¶ 45).

Ms. Galvez believes that between the December 20, 2022 email from Mr. Hess and the August 3, 2023 termination of her employment, InvestCloud renegotiated its contractual relationship with Digital Swiss Gold. (FAC ¶ 37). Under the new terms, the relationship was allegedly extended for multiple years at a contract value of $1.5 million per year. (*Id.*). Ms. Galvez also believes that under the contract, Digital Swiss Gold pays InvestCloud between $375,000 and $700,000 each quarter and owes InvestCloud a total of at least $4 million. (*Id.* ¶¶ 38-39).

### B.    Procedural Background

#### 1.    Initiation of the Action

Ms. Galvez commenced this action on December 29, 2023, by filing the Complaint in this Court. (Dkt. #1 ("Complaint")). In this action, she raises five counts against Defendants. Count I alleges that Defendants violated the FLSA, 29 U.S.C. §§ 201-219, by failing to compensate Ms. Galvez for her overtime work. (FAC ¶¶ 46-50). Count II alleges a violation of the NYLL for the same conduct. (*Id.* ¶¶ 51-56). Count III alleges that Defendants violated a different provision of the NYLL, Article 19 § 191(c), by failing to pay Ms. Galvez her earned commissions. (*Id.* ¶¶ 57-60). Count IV alleges that Defendants violated NYLL §§ 195(3) and/or 198(1-b) by failing to provide Ms. Galvez with wage statements, such that she was unaware that she was not being compensated for all hours worked. (*Id.* ¶¶ 61-65). Finally, Count V alleges that Defendants

violated NYLL § 191-1(c) by failing to provide Ms. Galvez with a written commission plan.  (*Id.* ¶¶ 66-68).

On February 14, 2024, Defendants filed a letter seeking a pre-motion conference regarding an anticipated motion to partially dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. #10).  One week later, Ms. Galvez responded to the letter.  (Dkt. #11).  Then, on February 27, 2025, after communicating with the parties, the Court referred the case to the Court-annexed Mediation Program.  (Dkt. #12).  The mediation was unsuccessful.  (May 22, 2024 Minute Entry).

Defendants subsequently renewed their request for a pre-motion conference regarding their anticipated motion to partially dismiss (Dkt. #13), which Ms. Galvez opposed (Dkt. #14).  On June 4, 2024, the Court waived the pre-motion conference requirement and set a briefing schedule.  (Dkt. #15).  Briefing on the motion concluded on August 16, 2024.  (Dkt. #16-19).

    2.    *Galvez I*

On February 12, 2025, the Court issued an oral decision ("*Galvez I*"), granting Defendants' motion to dismiss Counts I, II, and IV of the Complaint and to dismiss Motive as a Defendant, but the Court also granted Ms. Galvez's request for leave to amend.  (February 12, 2025 Minute Entry; *see generally* Dkt. #22 ("Oral Decision Tr.")).  The Court first dismissed Ms. Galvez's overtime claims under the FLSA and the NYLL (Counts I and II), holding that Ms. Galvez had not pleaded them with the necessary specificity.  (Oral Decision Tr. 8:18-

6

9:3). Specifically, the Court explained that Ms. Galvez had not adequately pleaded that she worked overtime. (*Id.* at 8:25-11:16).

Additionally, the Court dismissed all claims as to Motive because Ms. Galvez had not alleged sufficient facts showing that Motive employed her. (Oral Decision Tr. 11:17-15:1). Specifically, the Court held that Ms. Galvez had not adequately pleaded that Motive and InvestCloud were either a single integrated enterprise or joint employers, because her only allegation in support was that Motive is an investor and managing operator of InvestCloud. (*Id.* at 13:14-13:22).

Finally, the Court dismissed Count IV on two grounds. *First*, it held that Ms. Galvez lacked standing because she had not alleged any injury-in-fact stemming from Defendants' alleged failure to provide wage statements. (Oral Decision Tr. 17:1-17:21). *Second*, the Court held that Ms. Galvez had failed to plausibly allege violations of NYLL §§ 195(3) and/or 198(1-b) because she did not specify in the Complaint what was deficient about the wage statements she received. (*Id.* at 17:22-18:12). The Court, however, granted Ms. Galvez leave to amend her claim. (*Id.* at 18:16-18:17).

       3.    **Post-*Galvez I* Litigation**

On March 6, 2025, after *Galvez I*, Ms. Galvez filed the FAC, the operative pleading in this matter. (Dkt. #21). On March 27, 2025, Defendants filed a letter indicating that they wished to move again to partially dismiss the FAC under Rules 12(b)(1) and 12(b)(6). (Dkt. #24). Specifically, Defendants planned to move to dismiss with prejudice (i) Count IV of the FAC and (ii) Motive as a

7

Defendant. (*Id.*). Defendants withdrew their challenges to Counts I and II. (*Id.*).

The Court endorsed that letter on April 2, 2025, setting a telephone conference to discuss Defendants' anticipated motion to dismiss. (Dkt. #25). Ms. Galvez then replied to Defendants' letter on April 16, 2025. (Dkt. #26). On April 23, 2025, the Court held a pre-motion conference, at which the parties discussed discovery and set a briefing schedule for Defendants' second motion to dismiss. (April 23, 2025 Minute Entry). On April 29, 2025, the Court entered a case management plan. (Dkt. #28).

On May 9, 2025, Defendants filed their partial motion to dismiss (Dkt. #29), as well as a memorandum of law in support thereof (Dkt. #30). Ms. Galvez filed her memorandum of law opposing Defendants' partial motion to dismiss on June 6, 2025. (Dkt. #31). Defendants filed their reply memorandum of law on June 20, 2025 (Dkt. #32), along with a reply affirmation of Courtney D. Tedrowe (Dkt. #33). Defendants' partial motion to dismiss is currently before the Court.

## DISCUSSION

**A.    Applicable Law**

    **1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1) for Lack of Standing**

A district court must dismiss a claim under Rule 12(b)(1) when the court "'lacks the statutory or constitutional power to adjudicate it,' such as when … the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp.* v. *Hellas Telecomms., S.à.r.l*, 790 F.3d 411, 416-17 (2d Cir.

2015) (internal citation omitted) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)). To establish Article III standing, plaintiffs must show, among other things, "that they 'suffered an injury in fact.'" *Soule* v. *Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023) (en banc) (quoting *Spokeo, Inc.* v. *Robbins*, 578 U.S. 330, 338 (2016)).

Further, a plaintiff must meet the requirements of Article III standing for each claim asserted, regardless of whether the court has subject matter jurisdiction over that claim. *See Guthrie* v. *Rainbow Fencing Inc.*, 113 F.4th 300, 304-05 (2d Cir. 2024) ("We agree with the district court that the supplemental jurisdiction statute does not excuse [plaintiff] from demonstrating that he has standing to maintain his state-law claim[.]").

### 2. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim

Under Rule 12(b)(6), a defendant may seek partial dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator*

*Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge[ ] [a plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)). Bare recitals of the elements of a cause of action are not sufficient, and courts need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678.

## B. The Court Grants Defendants' Motion to Dismiss Motive as a Defendant with Prejudice

Defendants first ask the Court to dismiss Motive as a Defendant under Rule 12(b)(6). (Def. Br. 3-8). Resolution of this issue depends on whether Ms. Galvez has plausibly alleged that Motive employed her. Under the FLSA, where there are "joint employers," each employer may be liable, individually and jointly, for violations. 29 C.F.R. § 791.2(a). The most common test for determining whether an entity is a joint employer under the FLSA is the "economic reality" test. *See Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) (discussing the test and citing, among others, *Goldberg* v. *Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).

Courts in the Second Circuit have also recognized that a plaintiff can establish that that a defendant is liable under the FLSA using the "single integrated enterprise" test. *See, e.g.*, *Chen* v. *TYT E. Corp.*, No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012); *see also Arculeo* v. *On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197-98 (2d Cir. 2005) (discussing the single integrated enterprise test in the context of an employment discrimination action); *Jackson* v. *Total Relocation Servs., LLC*, No. 23 Civ. 4118

(KPF), 2024 WL 4850814, at *6 n.3 (S.D.N.Y. Nov. 21, 2024) (discussing the distinction between "single entity" doctrine of employment and "economic reality" theory of employment). As detailed herein, Ms. Galvez has not provided sufficient allegations that Motive is her employer under either theory.

### 1. Plaintiff Has Not Pleaded That Defendant Motive Is Her Employer Under the Economic Reality Test

Under the economic reality test, whether an entity is an "employer" for the purposes of the FLSA is a flexible, economics-driven analysis to be determined on a case-by-case basis. *Barfield*, 537 F.3d at 141-42.[2] When analyzing whether a defendant is, in economic reality, a joint employer, "the overarching concern is whether the alleged employer possessed the power to control the workers in question." *Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

Courts in the Second Circuit generally consider four factors, none of which is dispositive: (i) whether the alleged joint employer "had the power to hire and fire the employees"; (ii) whether the alleged joint employer "supervised and controlled employee work schedules or conditions of employment"; (iii) whether the alleged joint employer "determined the rate and method of payment"; and (iv) whether the alleged joint employer "maintained employment

---

[2] The analysis is the same under New York law. *See, e.g.*, *Franco* v. *Jubilee First Ave. Corp.*, No. 14 Civ. 7729 (SN), 2016 WL 4487788, at *5 (S.D.N.Y. Aug. 25, 2016) (noting that courts in the Second Circuit apply the economic reality test to determine employer status under both the FLSA and the NYLL and collecting cases); *Fernandez* v. *Kinray, Inc.*, 406 F. Supp. 3d 256, 261 n.3 (E.D.N.Y. 2018) ("The definition of employer and analysis for determining whether an employer/employee relationship exists under the NYLL are parallel to that of the FLSA.").

records." *Barfield*, 537 F.3d at 142 (internal quotation marks omitted) (quoting *Carter* v. *Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Perez Perez* v. *Escobar Constr., Inc.*, No. 23-1240-cv, 2024 WL 3594325, at *2 (2d Cir. July 31, 2024) (summary order).

Compared with the original Complaint, the FAC has added some — albeit minimal — context regarding Motive's role in Ms. Galvez's employment. Specifically, the FAC alleges that Motive is "responsib[le] for the daily operations of InvestCloud," and that "employees, partners and principals of [Motive] were embedded in InvestCloud and directed operations including effectively recommending human resource policy and decision such as hiring, firing, promotion and setting compensation policy." (FAC ¶¶ 4-5).

Even taken as true, these additional allegations do not establish that Motive jointly employed Ms. Galvez under the economic reality test. There are no specific allegations that Motive had "the power to control" Ms. Galvez. *Herman*, 172 F.3d at 139. As the Court previously stated, Ms. Galvez's substantive allegations point only toward InvestCloud's power over her employment and make no mention of Motive. (*See* FAC ¶¶ 18, 35, 37-38 (alleging that Ms. Galvez worked at InvestCloud's office and that her clients directly contracted with InvestCloud)).

Ms. Galvez's allegation that people affiliated with Motive were "embedded in InvestCloud" is insufficiently specific to allege joint employment, especially when Ms. Galvez does not explain her own position or any of her purported coworkers' positions within Motive. (*See* FAC ¶¶ 5, 31). Ms. Galvez's

12

allegations do not suggest that Motive made any decisions about her employment. She does not explain who at Motive "had the power to hire and fire" her, nor does she explain how anyone at Motive "supervised and controlled" her work. *Barfield*, 537 F.3d at 142 (internal quotation marks omitted) (quoting *Carter*, 735 F.2d at 12). And she makes no mention of "employment records" linking her with Motive. *Id.* (internal quotation marks omitted) (quoting *Carter*, 735 F.2d at 12).

Therefore, Ms. Galvez cannot assert claims against Motive under the economic reality theory. In fact, as Defendants point out, she does not even appear to argue that Motive can be held liable under the theory, instead focusing her brief entirely on the single integrated enterprise theory, which the Court addresses next. (*See* Def. Reply 3 (noting that Plaintiff's Opposition "focuses *solely* on the integrated enterprise test")).

### 2. Plaintiff Has Not Pleaded That Defendant Motive Is Her Employer Under the Single Integrated Enterprise Test

Unlike the economic reality test, which turns on whether an alleged employer has power over the plaintiff's employment, *see Herman*, 172 F.3d at 139, the single integrated enterprise test turns on whether that alleged employer — in combination with an entity that does control plaintiff's employment — constitutes a single enterprise, *see Arculeo*, 425 F.3d at 197-98 (explaining the difference between the two theories).

As a preliminary matter, Defendants argue that the single integrated enterprise test should not apply in FLSA cases. (Def. Br. 5). But as this Court has recognized, while "[t]he Second Circuit has not addressed whether the

13

single employer doctrine applies in the FLSA context, ... courts in this District often apply the doctrine in that context." *Jackson*, 2024 WL 4850814, at *6 n.3 (internal quotation marks omitted) (quoting *In re Domino's Pizza Inc.*, No. 16 Civ. 6274 (AJN), 2018 WL 1587593, at *2 (S.D.N.Y. Mar. 27, 2018)).  In fact, "the Second Circuit, in a recent summary order, cited both theories in the context of determining whether corporate defendants were 'employers' with the meaning of the FLSA." *Id.* (citing *Perez Perez*, 2024 WL 3594325, at *2, 4).  The Court thus considers whether Ms. Galvez has sufficiently pleaded that InvestCloud and Motive constitute a single integrated enterprise.

Relevant factors of the single integrated enterprise test include the alleged employers' "[i] interrelated operations, [ii] common management, [iii] centralized control of labor relations, and [iv] common ownership." *Chen*, 2012 WL 5871617, at *3 (internal quotation marks omitted) (quoting *Murray* v. *Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).  "To demonstrate single employer status, not every factor need be present, and no particular factor is controlling." *Lihli Fashions Corp., Inc.* v. *Nat'l Lab. Rels. Bd.*, 80 F.3d 743, 747 (2d Cir. 1996).  That said, "control of labor relations is the central concern." *Murray*, 74 F.3d at 404-05 (collecting cases).

Ms. Galvez makes stronger allegations that Motive and InvestCloud are a single integrated enterprise than joint employers, but even these allegations ultimately fail.  Some additions in the FAC relate to the factors identified above: For example, Ms. Galvez alleges that Motive is "responsib[le] for the daily operations of InvestCloud."  (FAC ¶ 4).  She further alleges that Motive's

14

"employees, partners and principals … were embedded in InvestCloud and directed operations," including by recommending "human resource policy and decision[s]" regarding "hiring, firing, promotion and setting compensation policy." (*Id.* ¶ 5). These allegations speak to interrelated operations and common management. *See Chen*, 2012 WL 5871617, at *3.

But the allegations remain insufficient because, even if true, they do not establish that Defendants are a single integrated enterprise. Ms. Galvez alleges that Motive is "*an* investor" in InvestCloud, not the sole or even majority owner. (FAC ¶ 4 (emphasis added)). Therefore, she has not sufficiently shown common ownership. *See Chen*, 2012 WL 5871617, at *3. And even Ms. Galvez recognizes that she has not alleged centralized control of labor relations (*see* Pl. Opp. 9 ("Since Plaintiff alleges in the Complaint that Defendant Motive ow[n]s, operates, and manages Defendant InvestCloud three (3) of the four (4) prongs of the integrated entity test are satisfied[.]")), which the Second Circuit has called "the central concern" of the test, *Murray*, 74 F.3d at 404. Therefore, Ms. Galvez's allegations are insufficient because she has not adequately pleaded two of the four factors, including the most important one.

The Court thus dismisses Motive from the case. And because Ms. Galvez has already been given a chance to cure the deficiencies in her pleading, that dismissal is with prejudice. *See, e.g., Sweet Baby Lightning Enters. LLC* v. *Keystone Cap. Corp.*, No. 21 Civ. 6528 (RA), 2023 WL 5334016, at *5 (S.D.N.Y. Aug. 18, 2023) ("Plaintiffs do not specifically seek leave for further amendment. Given that Plaintiffs have already been given an opportunity to amend, the

Court concludes that further amendment would be futile. Accordingly, the Court thus finds dismissal with prejudice is warranted.").

## C. The Court Denies Defendants' Motion to Dismiss Count IV

Count IV of the FAC asserts violations under the NYLL stemming from Defendants' alleged failure to provide Plaintiff with wage statements. (FAC ¶ 62). Defendants ask the Court to dismiss Count IV of the FAC under both Rule 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. (Def. Br. 8-9). The Court holds that Plaintiff has sufficiently cured the deficiencies in the original Complaint, so it therefore denies Defendants' motion to dismiss Count IV of the FAC.

### 1. Plaintiff Has Standing to Pursue Count IV

To have standing to raise a wage statement claim, a plaintiff must plead that the wage statement violation caused her to suffer an injury-in-fact. *See, e.g.*, *Montalvo* v. *Paul Bar & Rest. Corp.*, No. 22 Civ. 1423 (JLR) (SN), 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 13, 2023) ("Many courts have held, and this Court agrees, that a plaintiff lacks standing to recover for a wage notice or statement violation under § 195 [of the NYLL] when the plaintiff pleads nothing more than the statutory violation and a demand for damages." (collecting cases)).

In the context of a wage statement claim, a plaintiff establishes injury-in-fact by "show[ing] some causal connection between the lack of accurate notices and the downstream harm." *Guthrie*, 113 F.4th at 308. This could include "show[ing] that [the plaintiff] would have undertaken ... advocacy and plausibly

16

would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Id.* It could also include allegations that "noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion." *Id.* at 309.

Here, Ms. Galvez alleges that Defendants failed to provide her with proper wage statements. (FAC ¶ 62). The FAC further alleges that "[h]ad Defendants provided [her] with a wage statement as required by law, [she] would have observed and been on notice that she was not being paid for all hours worked." (*Id.* ¶ 63). In substance, Defendants' alleged failure "prevent[ed] [Ms. Galvez] f[ro]m being aware that she was not being compensated for all hours worked." (*Id.* ¶ 64). Ms. Galvez added these latter two allegations in the FAC. (*Compare* Complaint ¶¶ 50-52, *with* FAC ¶¶ 61-65).

Contrary to Defendants' arguments (*see* Def. Br. 8-9), these allegations are sufficient to establish standing. Ms. Galvez asserts that Defendants' alleged wage statement violations kept her from being timely paid and prevented her from advocating for additional compensation. These are the exact types of harm that *Guthrie* explained would be sufficient. *See* 113 F.4th at 308-09. In fact, in that case, the Second Circuit warned district courts against "impos[ing] too high a burden on plaintiffs-employees in § 195 cases." *Id.* at 309. The Court thus holds that Ms. Galvez has established standing.

### 2. Plaintiff Has Adequately Pleaded Count IV

Ms. Galvez's additional allegations are sufficient to make out a wage statement claim under the NYLL, though barely. The Court previously

17

dismissed Count IV under Rule 12(b)(6) because Ms. Galvez had not "allege[d] what was deficient about the wage statements that she received." (Oral Decision Tr. 18:3-18:12).

The FAC's new allegations, however, make clear that Ms. Galvez is not alleging that she received deficient wage statements; she is alleging that she did not receive any wage statements at all. For example, she now alleges that "Defendants intentionally failed to provide wage statements." (FAC ¶ 64; *see also id.* ¶ 63 ("Had Defendants provided Plaintiff with a wage statement … , Plaintiff would have … been on notice[.]")). The Court, like Defendants, wishes that Ms. Galvez would have included more allegations in the factual allegation section of the FAC, which is completely devoid of any mention of wage statements. (*See* Def. Reply 6-7 & n.2).

But the Court still believes that the allegations that Ms. Galvez added later in the FAC are sufficient to make out a claim for a wage statement violation under the New York Labor Law. *See, e.g., Collison* v. *WANDRD, LLC*, 737 F. Supp. 3d 231, 245 (S.D.N.Y. 2024) ("The complaint … alleges that Plaintiff did not receive paystubs that accurately reflected his rate of pay, hours worked, and amounts deducted each week that he worked. [The complaint] therefore state claims for relief." (internal citation omitted)); *Perdomo* v. *113-117 Realty, LLC*, No. 18 Civ. 9860 (VB), 2019 WL 6998621, at *6 (S.D.N.Y. Dec. 20, 2019) ("Here, plaintiff alleges defendants did not keep or provide payroll records throughout his employment. Thus, plaintiff has adequately stated a claim under the NYLL's wage statements requirement.").

18

## CONCLUSION

For the reasons explained above, Defendants' partial motion to dismiss is GRANTED IN PART and DENIED IN PART. Motive is dismissed as a Defendant, with prejudice, while Count IV of the FAC may proceed. The parties are further directed to file a joint letter describing next steps on or before **January 30, 2026**.

The Clerk of Court is directed to terminate the pending motion at docket entry 29. The Clerk of Court is further directed to terminate Motive from the docket.

SO ORDERED.

Dated:   January 21, 2026
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge